## HILTON'S ADMINISTRATOR *v.* JONES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF NEBRASKA.

No. 1. Submitted October 28, 1895. — Decided November 18, 1895.

L. filed his petition in a State court of Nebraska, setting forth that he was
the owner, as trustee for two infants, of an undivided two-thirds interest
in a tract of land in that State, and individually in his own right of the
other undivided third; that the lands yielded no revenue and were en-
cumbered with unpaid taxes, etc.; and praying for leave to sell or mort-
gage one-half of the lands, declaring his willingness to join in the deed
or mortgage as to his individual interest. A supplementary petition
accompanied this and was filed with it, certifying to the integrity of L.,
and praying that power might be given him to sell or mortgage the
premises as asked. This petition was signed by several parties in inter-
est, among whom was H. The court, in its decree, recited the title as
stated in the petition, and authorized the sale as asked for. On a bill
filed by H. to establish his title to one undivided third part of the lands,
and prosecuted after his death by his administrator, *Held*, that the
alleged title of H. was *res judicata;* that he was estopped from maintain-
ing this suit; and that it was not open to him or his representative in
this suit to question the authority of the attorney of H. in the proceed-
ings in the state court.

THIS was a bill in equity, filed by George H. Hilton, appel-
lant's intestate, to cancel certain deeds, and to establish the
title of the complainant to an undivided one-third of about
1900 acres of land, the greater portion of which is situated in
Lancaster County, Nebraska, and near to the city of Lincoln.
The litigation originally consisted of two suits, which were
heard together in the lower court. The other suit, in which
the two surviving sons of the appellant's intestate here were
complainants, was appealed to this court, but was dismissed
by reason of the appellants failing to print the record. In
that suit the appellants claimed a beneficial interest in two-
thirds of the lands. In this suit appellant claims an undivided
one-third of the same lands.

The facts of the case are substantially as follows:

1. On October 26, 1861, complainant's intestate, George H.

Hilton, being the owner of the lands described in the bill, conveyed the same for a nominal consideration to his brother "John Hilton, his heirs and assigns forever," in trust for the benefit of his sons George L., James F., and Joseph B. Hilton, "in equal portion, said trustee having authority to sell and convey all or any portion at any time or in any way at his discretion, for their benefit, the following-described real estate," etc., "to have and to hold the same to the only proper use of said John Hilton, in trust as aforesaid, his heirs and assigns forever." This trust was accepted.

2. On September 16, 1863, said John Hilton as trustee, by warranty deed, absolute in terms, and for the expressed consideration of $1000, conveyed all the said lands to Alice B. Hilton, now Alice B. Ducharme, a sister of the three *cestuis que trustent*. It appeared upon the face of the deed that Hilton conveyed as trustee for the three sons of complainant George H. Hilton.

3. On November 22, 1865, Alice B. Hilton, upon the eve of her marriage, conveyed the same premises to Augusta Hilton, her sister, a girl of 18 years, by an absolute deed without mentioning the trust.

4. On May 18, 1866, George H. Hilton, the original complainant, and his wife Honora, also executed to their daughter Augusta a deed of the same land with the following clause: "This deed is made to perfect the title in Augusta Hilton, as it appears that the deed made by above grantors dated 26 October, 1861, through which title to said lands vested in her, has not been recorded and has been mislaid or lost;" concluding with the following clause: "To have and to hold the same to the said Augusta Hilton, her heirs and assigns forever," with a short covenant of warranty and of seizin.

5. On August 25, 1871, George L. Hilton, having attained his majority, Augusta Hilton conveyed to him in fee an undivided one-third part of all said lands with the usual covenants of warranty. It seems, too, that on the same day Augusta Hilton also conveyed to her brother George the remaining undivided two-thirds of the property, in trust for his two brothers. This deed, however, does not appear in the

record of this case, and is immaterial so far as the undivided one-third in controversy is concerned.

6. On September 11, 1872, said George L. Hilton conveyed an undivided one-third of 180 acres of said lands in fee by deed to Smith B. Galey, for a consideration of $3500, and on September 16, 1872, by a second deed to Galey, for a consideration of $5000, his entire interest in all the lands.

7. On September 18, 1873, the said Galey, together with said George L. Hilton, conveyed to William C. Lincoln an undivided one-third of the same lands, with a covenant against their own acts. The other defendants took their titles from Lincoln.

There were allegations in the bill that these conveyances from George H. Hilton to Galey, and from Galey to Lincoln, were for an inadequate consideration, and were procured by fraud, and that Lincoln's title was defective, unauthorized, illegal, and void.

On December 13, 1873, a petition was filed in the District Court of the county of Lancaster by William C. Lincoln, as plaintiff, against James F. Hilton, Joseph B. Hilton, infants under the age of 21 years; *George H. Hilton,* the appellant's intestate; Alice B. Ducharme, Augusta Hilton, George L. Hilton, and Nora M. Lincoln, setting forth that the plaintiff held in trust for James F. and Joseph B. Hilton, the two infants, a two-thirds interest in the lands in question; that the lands were wild and uncultivated, yielding no revenue; that the infants had no other property; that the unpaid taxes amounted to over $1500; that, owing to the mismanagement of John Hilton, the financial embarrassment of George H. Hilton, and to several unlawful conveyances of such lands, they became the subject of long and expensive litigation, and the plaintiff was obliged to expend large sums of money in maintaining the rights of said infants; that although the various conveyances of the property terminating in the deed to himself, conveyed the legal title, it had been questioned whether it was not necessary to have a decree of the court, confirming the equitable title in the plaintiff, that he might be able to procure the full value of the lands in case the court should deem it best to dis-

pose of the same. The plaintiff further alleged that *he was the owner in fee of the remaining one-third of the land* above described; that it would be necessary to sell or mortgage one-half of the lands to pay off the indebtedness and to provide a sufficient revenue for the support of the infants, and that he was willing to join in a deed or mortgage for the purpose of paying off the debts. He, therefore, asked for a decree authorizing him to sell or mortgage one-half of the lands, and to declare the equitable, as well as the legal, title to be in the plaintiff, as trustee for said infants.

To this petition was annexed as an exhibit a supplementary petition, signed by the appellant's intestate, *George H. Hilton,* his three sons and three daughters, certifying to the integrity, fidelity, and financial ability of the petitioner, William C. Lincoln, husband of one of the daughters, and praying the court to appoint him trustee for the two minor sons, under the original trust deed from George H. Hilton to his brother, John Hilton, with power to sell and mortgage the premises, etc. A summons was issued upon this complaint, which was served upon the defendants, with the exception of George H. Hilton, Alice B. Ducharme, and Augusta Hilton, and on January 21, 1874, the defendants George H. Hilton, Alice B. Ducharme, Augusta Hilton, and Nora M. Lincoln, by their attorney, Seth Robinson, entered a disclaimer of all right, title, or interest in the lands described in the petition. Upon the same day a decree was entered, reciting the appearance of the parties, the filing of the disclaimer, finding that the plaintiff held the legal title to an undivided two-thirds in trust for the infants, and that *he was the owner in fee of the other undivided one-third* of the same, and authorizing the sale of one-half of the property described.

This decree was never appealed from, and no attempt was ever made to impeach it.

Upon the hearing of the case upon pleadings and proofs, the bill was dismissed, and complainant appealed to this court.

*Mr. S. S. Gregory, Mr. William M. Booth,* and *Mr. James S. Harlan* for appellant.

*Mr. N. S. Harwood, Mr. John H. Ames,* and *Mr. Charles O. Whedon* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This bill was brought by the original owner of the land, George H. Hilton, against John Hilton, his trustee; Alice B. Ducharme, the grantee of John Hilton; Augusta Hilton, grantee of her sister Alice; Smith B. Galey, grantee of George L. Hilton, one of the *cestui que trusts,* to whom his sister Augusta had conveyed the land upon his attaining his majority; William C. Lincoln, grantee of Galey, and certain other parties who derive their title either as grantees or mortgagees of the undivided one-third interest conveyed by George L. Hilton to Galey and Lincoln. The bill deals particularly with the third interest conveyed to John Hilton for the benefit of George L. Hilton, who died September 16, 1877. Complainant now claims his interest either by descent, or, if his intestate's son was only seized of a life estate, then as owner of the reversion.

We think it entirely clear that the proceeding taken by Lincoln to obtain a sale of one-half the property operates to estop the complainant from maintaining this suit. The petition in that case stated that Lincoln, the plaintiff, held two-thirds of the property in trust for James F. and Joseph B. Hilton, and the remaining one-third he claimed to own in fee. In accordance with these allegations the District Court found that he did hold the two-thirds in trust for the infants, and that he was the owner in fee of the other undivided one-third, and authorized him to sell one-half of the entire property. This decree contains every element of a *res judicata.* The plaintiff in that proceeding is one of the defendants in this. George H. Hilton, the original complainant in this proceeding, was one of the defendants in that. He certified to the ability and integrity of Lincoln, disclaimed all interest in the property, allowed the decree to be taken against him, and took no steps to have it set aside, appealed, or modified.

The principal criticism of it is that Robinson was not the authorized attorney of the defendant in that case, and that his disclaimer of any interest of the complainant in the lands described in the petition was, therefore, not binding upon him. There is no evidence of this, however, except the unsworn statement of the complainant in his amended bill, which is not even signed by him in person. Of course this cannot be considered as against the decree of the District Court, which must necessarily have found that Robinson was authorized to make the disclaimer. There was certainly evidence from which the court might reasonably have adjudged, as it did, that Lincoln was the owner of an undivided one-third of the property in question. Not only does a statute of the State declare that "the term 'heirs' or other technical words of inheritance shall not be necessary to create or convey an estate in fee simple," and that "every conveyance of real estate shall convey all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used," but on May 18, 1866, George H. Hilton and his wife conveyed the lands in question to Augusta Hilton, who then held the title from her sister Alice, with the declaration that the deed was made to perfect the title in Augusta, "as it appears that the deed made to above grantors dated 26th October, 1861, through which the said land vested in her has not been recorded and has been mislaid or lost." Without expressing an opinion whether Lincoln did in fact hold the title to one-third, there was certainly evidence tending to show that the court might have made in perfect good faith the finding that it did.

In addition to this we have the opinion of the Supreme Court of Nebraska in a case brought by *Hilton* against one *Bachman*, (24 Nebraska, 490,) holding that complainant was bound by that judgment. In delivering the opinion the court observed: "All presumptions are in favor of the regularity of that proceeding. We must presume that the District Court which rendered the decree did so upon ample proofs of title, and that the decree being still in full force is binding, and settles the question of title."

The decree of the court below was clearly correct and is, therefore,

$$Affirmed.$$